THOMAS A. FRENSLEY, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Frensley v. Commissioner
Docket Nos. 10354-77, 1981-78, 2182-78, 2286-78, 2287-78, 2349-78, 2350-78, 2401-78, 2524-78, 3105-78, 3176-78, 3222-78, 4470-78, 4506-78, 5318-78, 5876-78, 8239-78, 10026-78, 1124-79, 1791-79, 2078-79, 2758-79, 3120-79, 5886-79, 7688-79, 10768-79, 9741-80, 15113-80, 15920-80.
United States Tax Court
T.C. Memo 1982-399; 1982 Tax Ct. Memo LEXIS 342; 44 T.C.M. (CCH) 481; T.C.M. (RIA) 82399; July 19, 1982. *342 Petitioners (policemen, firemen, magistrates, FAA employees, and maintenance employees) were residents of the Canal Zone during the years at issue. The Canal Zone Government did not allow private ownership of housing or land in the Canal Zone by any United States Government employee. Hence, all lodging and utilities were owned by the Canal Zone Government. The value of rent and utilities was withheld each month from the wages of petitioners. Petitioners claimed exclusions under sec. 119, I.R.C. 1954, from their taxable income for the years at issue for the amounts withheld from their wages for the payment of rent and utilities. Held, the claimed exclusions are denied on the ground that petitioners have failed to satisfy the requirement that their lodging be furnished on the business premises of the employer. Sec. 1.119-1(b), Income Tax Regs.Benninghoff v. Commissioner,71 T.C. 216 (1978), affd. 614 F.2d 398 (5th Cir. 1980) followed. Jack B. Hood, for the petitioners; Pamela L. Gist also for the petitioner in docket No. 8239-78. Ivan A. Gomez, for the respondent. STERRETT
MEMORANDUM FINDING OF FACTS AND OPINION STERRETT, Judge: In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes as follows: Docket
Taxable year
No.
Petitioner
ended Dec. 31,
Deficiency
10354-77
Thomas A. Frensley
1975
$1,227.50
1981-78
Louis A. Fogel and
Donella M. Fogel
1975
274.75
2182-78
Larry M. Birkett and
Barbara A. Birkett
1975
355.00
2286-78
Oswaldo I. Montalvo and
Dulce M. Montalvo
1975
611.50
2287-78
William P. Angelini
1975
695.00
2349-78
William E. Weigle and
Sandra L. Weigle
1975
1,308.40
2350-78
Guy M. Fealey and
Mary L. Fealey
1975
399.16
2401-78
Donald L. Nungester and
Sandra J. Nungester
1975
792.94
2524-78
Clive V. Mott and
Christine B. Mott
1975
546.82
3105-78
Donald W. Wilson and
Lillian R. Wilson
1975
806.00
3176-78
Robert B. Mills and
Evelia L. Mills
1975
772.37
3222-78
Timothy J. Corrigan and
1974
529.40
Taffy G. Corrigan
1975
582.92
4470-78
Daniel J. Maravilla and
Leonore A. Maravilla
1974
632.50
4506-78
Rodman Underhill and
Carmen I. Underhill
1975
506.69
5318-78
David E. Beach and
Lydia T. Beach
1975
795.00
1124-79
Robert L. Strey and
Cristina Strey
1975
581.75
2078-79
David J. Dear and
Carla C. Dear
1975
407.92
2758-79
Sylvan Welty
Claire Welty
1976
1,373.00
5886-79
Thomas P. Judge and
Margo C. Judge
1975
1,040.00
9741-80
Bobby L. Winford and
Janet B. Winford
1976
725.00
15113-80
Richard A. Williams, Jr. and
Genevieve E. Williams
1976
574.00
15920-80
Stevin C. Helin and
Gertrude K. Helin
1976
575.00
1791-79
Hubert E. Thomas and
Sandra R. Thomas
1976
500.00
8239-78
Darrell F. Brown
1976
1,909.00
7688-79
Darrell F. Brown
1975
1,193.00
10768-79
John Baker and
Jean G. Baker
1975
1,535.85
5876-78
Melvin R. Larsen and
Martha A. Larsen
1975
550.32
10026-78
Marvin A. Dalton and
Martha M. Dalton
1975
540.00
3120-79
Carl R. Tuttle and
1975
439.75
Darlene L. Tuttle
1976
504.00
1977
648.00
*344 After various concessions, the sole issue for decision is whether, pursuant to section 1198 I.R.C. 1954, petitioners may exclude from their gross incomes monies which were withheld by their respective employers from their wages for the payment of rent and utilities. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. With the exception of the following four cases, all petitioners herein were residents of the Canal Zone at the time of filing their petitions: petitioner in docket Nos. 8239-78 and 7688-79 was a resident of Little Rock, Arkansas and petitioners in docket Nos. 9741-80, 15113-80 and 15920-80 were residents of the Republic of Panama at the time of filing their petitions. With the exception of the following two cases, all petitioners filed their returns for the years at issue with the Director of International Operations, Washington, D.C.: petitioner in docket Nos. 8239-78 and 7688-79 filed his returns with the Office of the Internal Revenue Service, Philadelphia, Pennsylvania. The United States acted as the territorial sovereign in the Canal *345 Zone by virtue of a treaty between the United States and the Republic of Panama dated 1903. The Canal Zone Government carries on its activities on behalf of the United States in the Canal Zone, an area approximately 10 miles wide and 50 miles long, bounded on each side by the Republic of Panama. For the tax years at issue, the total military and civilian population of the Canal Zone was approximately 45,000. The approximate number of non-military United States employees in the Canal Zone was 13,000. I. Police officers.
Petitioners in the first 22 docket numbers listed above were citizens of the United States and residents of the Canal Zone who were employed as police officers by the Canal Zone Government during the respective years in issue. [2] It has been stipulated that the police officers were required to accept lodging in the Canal Zone as a specific condition of their employment and for their employer's convenience. The Canal Zone Government does not allow private ownership of housing or land in the Canal Zone by any United States Government employee. Hence, all lodging and utilities were owned by the Canal Zone Government. The value of rent and utilities was withheld *346 each month from the wages of the police officers. There are two geographic police districts in the Canal Zone. The police officers herein were required to live in the police district of the Canal Zone in which they were employed. Each police officer was required to have a special telephone installed in his quarters in order that he could be called to duty on immediate notice. Except in the case of emergencies, such police officers carried out normal Canal Zone police functions and duty assignments. Most officers worked rotating shifts that required normal, uniformed duties to be performed during an 8-hour segment of each workday. The police officers lived in quarters that were physically separate from the police stations. With the exception of petitioners David E. and Lydia T. Beach, petitioners herein offered no evidence that would indicate that *347 they performed any police work within the confines of their living quarters. During trial, only one petitioner police officer, David E. Beach, testified. During the taxable year at issue, Mr. Beach held the rank of detective lieutenant and was the senior investigating officer in the Cristobal police district. His duties included the investigation of major crimes and preparation of criminal cases for prosecution. During such investigations, Mr. Beach often was required to meet with informants, most commonly in drug cases. Such meetings could not take place at the police station due to the risk that the informant's anonymity would be lost, thereby rendering his value worthless. For this reason, Mr. Beach often met with informants at a location away from the police station or spoke with them by telephone. A number of these meetings took place at Mr. Beach's place of residence. Mr. Beach was in control of a contingency fund of $500 for the purchase of drugs by informants. This money was given out to informants either at his residence or at some other location. Mr. Beach also testified that his home had served as the "central point of operation" for some surveillance stakeouts. *348 Mr. Beach entertained visitors in his home for the stated purpose of maintaining effective cooperation with other law enforcement units. As a police officer, Mr. Beach was required to be "on call" during certain periods. [3] During a typical workday, Mr. Beach spent approximately 40 percent of his time at the police station. He also spent a substantial amount of time in the field conducting investigations. Mr. Beach lived approximately 5 miles from the police station where he worked. In his position as police officer, he was required to obtain prior authorization before any visitor could stay in his home for a period longer than 24 hours. He also was prohibited from conducting any outside business in his residence. II. Firemen.
Petitioners in docket No. 1791-79 were citizens of the United States. Petitioner Hubert E. Thomas was a resident of the Canal Zone and was employed as a fireman by the Canal Zone Government. *349 Mr. Thomas was required to accept lodging in the Canal Zone as a specific condition of his employment and for his employer's convenience. As with Canal Zone police officers, all housing and utilities were owned by the Canal Zone Government. The value of rent and utilities for such housing was withheld each month from the wages of petitioner Hubert E. Thomas. There are two fire districts in the Canal Zone. Mr. Thomas was required to live in the fire district of the Canal Zone in which he was employed. Except in the case of emergencies, Mr. Thomas carried out the normal Canal Zone fireman functions and duty assignments. He worked 24-hour shifts after which he was off duty for 24 hours. Mr. Thomas lived in quarters that were physically separate from the fire station. No evidence was offered indicating that Mr. Thomas performed any employment-related duties within the confines of his quarters. In the event that an off-duty fireman had to be recalled to work, [4] he was called by the fire lieutenant or by another authorized person. Thereafter, the fireman immediately left his home and traveled to the fire station. *350 III. Magistrates.
Petitioners in docket Nos. 8239-78, 7688-79 and 10768-79 were citizens of the United States and residents of the Canal Zone who were employed as magistrates by the Canal Zone Government. [5] Magistrates were required to accept lodging in the Canal Zone as a specific condition of their employment and for their employer's convenience. As with policemen and firemen, all housing and utilities were owned by the Canal Zone Government. The value of rent and utilities was deducted each month from the wages of the magistrates herein. There are two geographic judicial districts in the Canal Zone: the Balboa division and the Cristobal division. Magistrates were required to live in the judicial district in which they were employed. At least one magistrate was assigned to each division and in the event of the absence of one, the other normally would fulfill the duties required for both divisions. Such magistrates carried out normal Canal Zone magistrate functions, in that each magistrate *351 worked 5 days a week in his respective division courthouse. The magistrates lived in quarters that were physically separate from their assigned courthouses. The only magistrate petitioner to testify in this case was Darrell F. Brown. As a magistrate, Mr. Brown spent his workday at the courthouse. However, he was required to be accessible 24 hours a day and sometimes was called upon to perform judicial and extra-judicial duties after the termination of his normal workday. Thus, Mr. Brown often was required to issue arrest and search warrants and to set bail after normal work hours. In such case, these duties usually were performed by Mr. Brown in his residence, either over the telephone or in person. Mr. Brown testified that it was also within his scope of responsibilities to entertain "VIPs." However, the extent to which such entertainment was required to and in fact did take place in Mr. Brown's residence was not disclosed. Additionally, Mr. Brown frequently performed legal research after hours in his home. [6]
*352 IV. FAA employees.
Petitioners in docket Nos. 5876-78 and 10026-78 were citizens of the United States and residents of the Canal Zone who were employed by the Federal Aviation Administration (hereinafter the FAA). [7] The FAA employees herein were required to accept lodging in the Canal Zone as a condition of their employment and for their employer's convenience. As before, all housing and utilities were owned by the Canal Zone Government. The value of rent and utilities was deducted each month from the wages of the FAA employees. Petitioners lived in quarters at Cardenas Village that were physically separate from the FAA operational facilities. The only FAA employee to testify in this case was petitioner Melvin R. Larsen. Mr. Larsen was the area manager of the FAA's Balboa office and facilities. As such, he oversaw the operational air traffic control system. [8]
Mr. Larsen *353 lived approximately 3 miles from his business office. Cardenas Village was physically segregated from the FAA facility. Mr. Larsen testified that he considered himself sort of a "landlord" of Cardenas Village. In this connection, he stated that he often counseled tenants and their dependents and additionally held a number of community activities in his home during the year in question. Additionally, Mr. Larsen stated that he hosted business and social meetings within his house. In this connection, he was reimbursed by his employer for entertainment in his home on two occasions in 1975. However, the majority of such entertainment expenses was paid out of his own pocket. [9]
The FAA carried on its activities in the Canal Zone on behalf of the United States. While the FAA had a specific mission in the local area, it was subject to the overall control of the Governor of the Canal Zone. The other FAA employee in this case, Marvin A. Dalton, worked in a radar *354 facility as a maintenance technician. No testimony was presented with respect to any employment-related activities performed by petitioner Dalton in his place of residence. V. Maintenance Employees.
Petitioners in docket No. 3120-79 were citizens of the United States. Petitioner Carl R. Tuttle was a resident of the Canal Zone and was employed as a maintenance employee by the Panama Canal Company. The maintenance employees performed their work throughout the Canal Zone. Mr. Tuttle lived in a remote townsite designated by the Panama Canal Company. As before, all housing and utilities were owned by the Canal Zone Government. The value of rent and utilities was withheld each month from the wages of Mr. Tuttle. Mr. Tuttle was not required by specific regulation or directive to accept lodging within the Canal Zone, but his job description states that he was required to live within a certain townsite in the Canal Zone. Petitioners offered no evidence indicating that Mr. Tuttle performed any maintenance functions within the confines of his living quarters. All petitioners claimed exclusions under section 119 from their taxable incomes for the years indicated for amounts *355 withheld from their wages for the payment of rent and utilities. Respondent denied these exclusions on the ground that petitioners failed to meet the requirements of section 119. OPINION The sole issue we must decide is whether each of the petitioners is entitled to exclude, pursuant to section 119, amounts withheld from his wages for the payment of rent and utilities. Normally, all income from whatever source derived is included within the definition of gross income under section 61. Thus, the value of the lodging and utilities furnished to each petitioner herein constitutes gross income unless it is specifically excludable by statute. See Commissioner v. Duberstein,363 U.S. 278 (1960); Benninghoff v. Commissioner,71 T.C. 216, 218 (1978), affd. 614 F.2d 398 (5th Cir. 1980). Petitioners contend that the value of their lodging and utilities is excludable from gross income pursuant to section 119, which provides in pertinent part as follows: SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER. There shall be excluded from gross income of an employee the value of any meals or lodging furnished to *356 him by his employer for the convenience of the employer, but only if-- (2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment. [10]
In order to prevail, petitioners must satisfy the three-prong test imposed by the regulation under sec. 119 as a condition to qualification for the exclusion: (1) the lodging must be on the business premises of the employer; (2) the lodging must be furnished for the convenience of his employer; and (3) the employee must be required to accept the lodging as a condition of his employment. Sec. 1.119-1(b), Income Tax Regs. With the exception of petitioner Carl R. Tuttle, who was a maintenance employee of the Panama Canal Company, respondent has conceded that all petitioners were required to accept lodging as a condition of their employment and that such lodging was furnished for the *357 convenience of the employer. Respondent, however, contends that the first condition for exclusion under section 119 has not been met by any of the petitioners herein. If he is correct, the claimed exclusion must be disallowed. See Dole v. Commissioner,43 T.C. 697, 705 (1965), affd. per curiam 351 F.2d 308 (1st Cir. 1965). The question of whether the lodging of an employee residing in the Canal Zone is located on the business premises of the employer has been addressed by this Court in the past. In Benninghoff v. Commissioner,71 T.C. at 220, we rejected the broad assertion that the entire Canal Zone constitutes the business premises of the employer. In reaching this result, we stated that the test for determining satisfaction of the "business premises" requirement is not dependent upon mere ownership of the property involved. Rather, such property must bear an integral relationship to the business activities of the employer. Benninghoff v. Commissioner,71 T.C. at 221. The courts have developed a variety of tests for determining whether the business premises requirement has been met. In Benninghoff v. Commissioner,71 T.C. at 220, *358 we summarized the case law as follows: [T]he exclusion is available in situations in which lodging is furnished at a place where the employee performs a significant portion of his duties or on the premises where the employer conducts a significant portion of his business. * * * Similarly, the "phrase should be construed to mean either (1) living quarters that constitute an integral part of the business property or (2) premises on which the company carries on some of its business activities." Dole v. Commissioner,supra at 707. The question of whether petitioners have satisfied this standard is a question of fact upon which petitioners bear the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Lindeman v. Commissioner,60 T.C. 609, 614 (1973); Rule 142(a), Tax Court Rules of Practice and Procedure.
At the outset, we find that none of the petitioners herein resided in lodgings that were furnished on premises where the employer conducted some of its business activities. See McDonald v. Commissioner,66 T.C. 223, 230 (1976); Lindeman v. Commissioner,supra at 615; Dole v. Commissioner,supra at 707. *359 Thus, the narrow question we must face is whether petitioners herein performed a significant portion of their employee duties in their respective residences. I. Police officers.
The only police officer to testify during trial was petitioner Mr. Beach. We do not consider Mr. Beach's duties and responsibilities as senior investigating officer in his police district to be representative of the remaining petitioner police officers in this case. Mr. Beach testified that maintaining the secrecy of an informant's identity required him to meet with informants at locations other than the police station. Frequently, though not always, such meetings took place at Mr. Beach's home. Mr. Beach also testified that his residence had served as a central point for surveillance on occasion, although the frequency and duration of such "stakeouts" were left to our imagination. We do not believe that these activities are sufficient to constitute a significant portion of Mr. Beach's employment-related duties for purposes of section 119. Mr. Beach spent approximately 40 percent of his working day at the police station and a substantial amount of the remainder of his working day in the field *360 pursuing investigations and prosecutions of criminal activities. The fact that Mr. Beach, in the discretion accorded an officer in his position of authority, chose on occasion to meet with informants at his home, does not in itself satisfy the requirements of the business premises test. The evidence in connection with surveillance activities was far too sketchy to be given much weight in this regard. We find also that the entertainment of visitors in the home of a senior investigating police officer is not a significant employment-related responsibility. [10] Finally, as we stated in Benninghoff v. Commissioner,71 T.C. at 220, the fact that Mr. Beach was required to be on call 24 hours a day does not raise his "employment duties within the house to a degree sufficient to constitute the lodging as being on the business premises." In summary, we do not think that the totality of employment-related duties performed in Mr. Beach's home was sufficient to convert that home into "business premises" as that term has been defined by case law. See McDonald v. Commissioner,supra at 230. *361 Accordingly, we must deny his claimed exclusion under section 119. With respect to the remainder of the petitioner policemen in this case, we must deny the claimed exclusion as a result of their failure to carry their burden of proof. [11]
II. Firemen.
No evidence was presented at trial indicating that any employment-related activities were performed by petitioner Mr. Thomas in his place of residence during the year at issue. Accordingly, we must deny him the benefits of section 119. Welch v. Helvering,supra.
III. Magistrates.
As with police officer Mr. Beach, we believe that the fact that petitioners Mr. Brown and Mr. Baker were required to be readily available to perform judicial and extra-judicial duties at all times is not sufficient for purposes of the "business" premises" test. As a general rule, magistrates performed their judicial functions during their workday at the courthouse. While it is true that magistrates sometimes were called upon to *362 issue warrants and set bail after normal working hours, based on the evidence presented, we find that the nocturnal duties performed by magistrates in the Canal Zone do not rise to the standard of substantiality required by Benninghoff v. Commissioner,supra and prior case law. We think this situation is strikingly similar to that of Mr. Beach, who also was obligated to be on call and ready to carry out the duties of his position on a 24-hour basis. [12] Accordingly, the magistrates' claims under section 119 are denied. IV. FAA employees.
The only FAA employee to testify in this case was petitioner Melvin R. Larsen. We were not able to divine from his testimony Mr. Larsen's specific duties as area manager of the FAA Balboa office. His home was approximately 3 miles from his business office at the FAA facility. While Mr. Larsen considered himself as a sort of "landlord" of the village in which he was housed, and as such he met with residents of the *363 village and held community activities in his home, we are not convinced that these duties were within the scope of his employment responsibilities. Mr. Larsen was reimbursed for entertaining guests in his home on two occasions in 1975. While such reimbursement proves that such entertainment costs were expended for employment-related purposes, we do not believe that the entertainment constitutes "the requisite quantum or quality of activities" necessary under the business premises test. McDonald v. Commissioner,supra at 231. Therefore, we deny Mr. Larsen's claimed exclusion under section 119. The testimony with respect to petitioner Marvin A. Dalton, a maintenance technician employed by the FAA, did not indicate that any employment-related activities were conducted in his home. Accordingly, his claimed section 119 exclusion is denied. V. Maintenance employees.
Petitioner Mr. Tuttle did not testify at trial. Because no evidence was offered indicating that Mr. Tuttle performed any maintenance functions within the confines of his living quarters, we find that he has failed to meet his burden of proof and therefore that his claimed exclusion under *364 section 119 must be disallowed. To summarize, we find that in no case did the lodging of a petitioner herein "bear an integral relationship to the business activities of the employer." See Benninghoff v. Commissioner,71 T.C. at 221. Accordingly, Decisions will be entered under Rule 155 in docket Nos. 2287-78, 5318-78, 8239-78, 7688-79 and 10768-79.
Decisions will be entered for the respondent in all the remaining docket numbers.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Louis A. Fogel and Donella M. Vogel, docket No. 1981-78; Larry M. Birkett and Barbara A. Birkett, docket No. 2182-78; Oswaldo I. Montalvo and Dulce M. Montalvo, docket No. 2286-78; William P. Angelini, docket No. 2287-78; William E. Weigle and Sandra L. Weigle, docket No. 2349-78; Guy M. Fealey and Mary L. Fealey, docket No. 2350-78; Donald L. Nungester and Sandra J. Nungester, docket No. 2401-78; Clive V. Mott and Christine B. Mott, docket No. 2524-78; Donald W. Wilson and Lillian R. Wilson, docket No. 3105-78; Robert B. Mills and Evelia L. Mills, docket No. 3176-78, Timothy J. Corrigan and Taffy G. Corrigan, docket No. 3222-78; Daniel J. Maravilla and Lenore A. Maravilla, docket No. 4470-78; Rodman Underhill and Carmen I. Underhill, docket No. 4506-78; David E. Beach and Lydia T. Beach, docket No. 5318-78; Melvin R. Larsen and Martha A. Larsen, docket No. 5876-78; Darrell F. Brown, docket Nos. 8239-78 and 7688-79; Marvin A. Dalton and Martha M. Dalton, docket No. 10026-78; Robert L. Strey and Christina Strey, docket No. 1124-79; Hubert E. Thomas and Sandra R. Thomas, docket No. 1791-79; David J. Dear and Carla C. Dear, docket No. 2078-79; Sylvan and Claire Welty, docket No. 2758-79; Carl R. Tuttle and Darlene L. Tuttle, docket No. 3120-79; Thomas P. Judge and Margo C. Judge, docket No. 5886-79; John & Jean G. Baker, docket No. 10768-79; Bobby L. Winford and Janet B. Winford, docket No. 9741-80; Richard A. Williams, Jr. and Genevieve E. Williams, docket No. 15113-80; and Stevin C. & Gertrude K. Helin, docket No. 15920-80.↩
2. In the case of a joint return, the petitioner referred to is the petitioner spouse who was employed as a police officer by the Canal Zone Government. The Canal Zone Government is an agency of the United States, as defined in Title 5 of the U.S. Code and as specifically designated by Title 2, sec. 31 of the Canal Zone Code.↩
3. During 1975 there were four homicidal or suicidal deaths within Mr. Beach's district. These all took place at night. Mr. Beach was called at his home and either had to go investigate the deaths or call someone else to handle the investigation.↩
4. An off-duty fireman's whereabouts had to be accounted for at all times in case his services were needed in times of an emergency.↩
5. In the case of the joint return in docket No. 10768-79, the petitioner referred to is the petitioner spouse who was employed as a magistrate by the Canal Zone Government.↩
6. Petitioners John and Jean G. Baker offered no evidence indicating that Mr. Baker performed any of his daily work within the confines of their living quarters. However, it was the testimony of Mr. Brown that Mr. Baker, also a magistrate, performed the duties of his office in substantially the same manner as Mr. Brown.↩
7. In the case of a joint return, the petitioner referred to is the petitioner spouse who was employed by the FAA.↩
8. Although Mr. Larsen's testimony was very unclear, it appears that his chief function was to insure the safety of air traffic traveling in and out of the Canal Zone.↩
9. Mr. Larsen stated that he considered his home "an extension of his office." He stated that he performed over-time work at his home rather than at his office because he considered his house a better place to work.↩
10. Sec. 119↩ was amended by sec. 108(a)(1)(G) of Pub. L. 96-222, Apr. 1, 1980, 94 Stat. 225, effective for taxable years beginning after Dec. 31, 1977 and by sec. 205 of Pub. L. 95-615, Nov. 8, 1978, 92 Stat. 3107, effective for taxable years beginning after Dec. 31, 1977.
10. To find otherwise would make a virtual nullity of the business premises test.↩
11. We note that the unsuccessful petitioner in Benninghoff v. Commissioner,71 T.C. 216 (1978), affd. 614 F.2d 398↩ (5th Cir. 1980), was also a policeman.
12. Additionally, the mere fact that Mr. Brown chose to perform legal research in his home rather than at the courthouse library has little bearing on the resolution of the issue before the Court.↩